Argued and submitted June 19, affirmed November 14, 2013, petition for review denied March 14, 2014 (354 Or 840)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD FRANCIS PITTS,
*Defendant-Appellant.*

Josephine County Circuit Court
11CR0129; A148787

314 P3d 324

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was charged with, among other crimes, first-degree burglary, ORS 164.225,[1] on the ground that he entered a dwelling with the intent to commit the crime of interfering with a peace officer therein, ORS 162.247,[2] by refusing to obey the officer's lawful order to "stop." Defendant moved for a judgment of acquittal on the theory that his refusal to obey the order was completed when he first disobeyed the officer's command to stop; therefore, defendant argued, he could not have intended to commit that already-completed crime within the dwelling when, thereafter, he concededly entered it. The court denied the motion, and defendant was convicted.[3] He appeals, and we affirm.

In reviewing the denial of a motion for a judgment of acquittal, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the state to determine whether a rational trier of fact could have found that the state proved each element of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Consistent with that standard, the relevant facts are as follows. Grants Pass Police Officer Daniel and another officer arrived at an apartment complex to investigate several thefts that had occurred the night before. Some of the tenants identified defendant as a suspect, and the officers decided to speak with him. While

---

[1] ORS 164.225, in conjunction with ORS 164.215, provides, in part:

"(1) A person commits the crime of burglary in the first degree if the person [enters or remains unlawfully in a building with intent to commit a crime therein] and the building is a dwelling[.]"

[2] ORS 162.247 provides, as relevant:

"(1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181.610:

"* * * * *

"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer."

[3] Defendant was also convicted of two additional counts of burglary in the first degree, two counts of theft in the second degree, one count of theft in the first degree, one count of theft in the third degree, one count of interfering with a police officer, one count of unlawful entry into a motor vehicle, and one count of criminal mischief in the second degree. Those convictions are not at issue in this appeal.

the other officer approached the front of the apartment that defendant was in, Daniel went to the back, where he saw defendant standing at the base of a six-foot chain-link fence approximately 10 to 15 yards away. Defendant made eye contact with Daniel and then began climbing over the fence. Daniel yelled for defendant to "stop"; defendant, however, jumped down on the other side of the fence, paused for a couple of seconds, and then began running across the backyard of the neighboring residence. Daniel again yelled for defendant to stop and identified himself as a police officer, but defendant continued to flee.

Moments later, defendant entered the neighboring residence through the back door and went into the attached garage. One of the residents saw defendant enter and alerted her fiancé, who went into the garage to investigate. He saw defendant hiding there, yelled at him, and asked him what he was doing. Defendant said that he had just been in a fight and that the police were involved. He also said that he did not want to go to jail and asked the resident for help. The resident declined and told defendant to leave. Defendant left the garage, and within one minute he was in police custody. While in custody, he told police that he had fled because there were warrants for his arrest. Daniel estimated that less than two minutes had elapsed between the time when he ordered defendant to stop and when defendant was taken into custody. Defendant was arrested and charged with 10 burglary- or theft-related crimes, including first-degree burglary for the unlawful entry described above.

At trial, as described above, defendant moved for a judgment of acquittal on the charge of first-degree burglary for entering the residence with the intent to interfere with a police officer. He argued that the state had not presented sufficient evidence of his intent to commit a crime within the residence. According to defendant, because the crime of interfering with a peace officer by refusing to obey a lawful order was complete at the moment he refused to obey Daniel's order at the chain-link fence, and no further orders were given, defendant could not have entered the house with the intent to commit that already-completed crime. The state responded that it had provided sufficient evidence

that defendant entered the dwelling with the intent to avoid capture, that is, to refuse to obey the order from Daniel. The trial court denied the motion, finding that there was a "continuation of his attempt to get away." Defendant was subsequently convicted.

On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal. He reasons that the legislature could not have intended interfering with a peace officer by refusing to obey a lawful order to be a continuous, ongoing crime. Such an interpretation, defendant reasons, would compel the conclusion that a defendant who disobeys an order and flees from the police may commit the offense for months or years thereafter until his capture, with the result that every trespass during that period would automatically become a burglary.

In response, the state does not focus its argument on the question of whether the crime of refusing to obey the lawful order was complete once defendant first disobeyed it. Rather, the state argues that defendant's subsequent actions were additional violations of the same, single lawful order to stop. Under the state's theory, defendant could be charged with a separate count of interfering with a peace officer for each of his actions motivated by an intent to disobey that order; at oral argument, the state agreed that, if the state so desired, it could charge defendant for every step he took after hearing the order. The state provides two arguments for why this theory of criminal liability would not produce absurd results: First, a defendant's intent to disobey a lawful order would dissipate over time and become more difficult to prove; and, second, the multiple counts of the crime would be merged into a single conviction at trial. Applying that theory to this case, the state maintains that a jury could find that defendant committed the crime multiple times, including when he entered the dwelling, if the jury was persuaded that, at the time of the entrance, defendant intended to continue disobeying. Therefore, this subsequent and additional refusal to obey the lawful order could properly act as the underlying crime required for first-degree burglary. Although we agree that the state has the better argument, our reasoning is somewhat different.

The requirement that a defendant intends to commit a crime within the unlawfully-entered building is an essential feature of burglary. "Since the time of Blackstone, the defendant's intent to commit a crime in the building has been the characteristic distinguishing burglary from mere trespass." *State v. Chatelain*, 347 Or 278, 286, 220 P3d 41 (2009) (citing 4 William Blackstone, *Commentaries on the Laws of England* 227 (1769) ("[I]t is clear, that [the] breaking and entry must be with a felonious intent, otherwise it is only a trespass.")). Furthermore, the defendant must possess the intent to commit a crime *at the time* of the unlawful entry. *State v. Chatelain*, 220 Or App 487, 492, 188 P3d 325 (2008), *aff'd*, 347 Or 278, 220 P3d 41 (2009). This requirement is consistent with the underlying legislative purpose of burglary, which is to punish trespass for the purpose of committing a crime. *State v. J. N. S.*, 258 Or App 310, 319, 308 P3d 1112 (2013).

As it is used in the burglary statute, the phrase "with intent" means "that a person *acts with a conscious objective*" to engage in certain conduct. ORS 161.085(7) (emphasis added). Thus, to determine whether defendant's actions constitute burglary, the determinative question is whether defendant entered the building with the conscious objective to disobey a lawful order. Because burglary turns on the person's intent upon entry, it is not necessary that the person actually *accomplish* the crime within the dwelling. *See State v. Kelly*, 5 Or App 103, 107-08, 482 P2d 748 (1971) (circumstantial evidence was sufficient to prove an intent to steal, even though nothing was actually taken). Indeed, it is not even necessary for the person to know that the opportunity to accomplish the crime will arise. In *State v. Batson*, 35 Or App 175, 178, 580 P2d 1066 (1978), for example, we held that, where the defendant removed a screen from a window and fled when police arrived, a jury could find that the defendant attempted to enter the dwelling with the intent to commit a crime inside. Intent is necessarily prospective; a person cannot at one moment in time intend to commit an action that occurred at an earlier moment. Thus, a burglary is complete the moment the person enters the building with intent to commit a crime, necessarily not yet committed, therein—notwithstanding what occurs afterwards.

With that background, defendant's argument that the earlier completion of the crime negates any evidence of his intent to commit a crime upon entry is not persuasive; a jury could find that defendant committed burglary based on a present intent (as of the time of entry) to continue refusing to obey the officer's lawful order. Defendant contends that his case is comparable to *State v. Lonergan*, 344 Or 15, 176 P3d 374 (2008), where the Supreme Court held that the crime of escape does not continue throughout the duration of a person's attempt to flee the police, but rather is complete once the individual leaves police custody. Relying on that decision, defendant argues that, had he been charged with escape instead of interfering with a peace officer, it would be clear that the crime had been completed. As we have noted above, that analogy fails to address the crucial question of burglary: Did the defendant enter the dwelling with intent to commit the alleged crime therein? That inquiry cannot depend on whether the crime was completed earlier.

At the same time, we are not persuaded by the state's argument that defendant repeatedly disobeyed the officer's order with every step defendant took. As defendant maintains, that argument proves too much by potentially converting every future unlawful entry of a building into a burglary. To limit the reach of the state's argument, we conclude that the intent to refuse to obey the officer's order can serve as the basis for a burglary conviction only if the original order, the unlawful entry, and the intent to refuse to obey that order, all take place as part of a single continuous criminal episode. That concept—a single criminal episode—is far from novel in Oregon law, appearing in several statutes.[4] While distinguishing a single continuous criminal episode from a sequence of such episodes is not

---

[4] *E.g.*, ORS 131.505(4) (for purposes of double jeopardy, a single criminal episode "means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective"); ORS 137.717(7)(a) ("[W]hen sentences are imposed for two or more convictions arising out of the same conduct or criminal episode, none of the convictions is considered to have occurred prior to any of the other convictions arising out of the same conduct or criminal episode."); ORS 161.067(1) ("When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.").

always self-evident, it is a serviceable construct well within the ability of jurors to apply.

And even if it could present some difficulty in other cases, in this case it does not. Here, the state adduced evidence, both direct and circumstantial, of defendant's intent when he entered the dwelling. Defendant had disobeyed two lawful orders by Daniel moments before he entered the dwelling. The dwelling that defendant entered was very close to the chain-link fence where defendant had disobeyed those orders. While in the dwelling, defendant stated that he was hiding from the police and wanted the resident's help to continue hiding from the police. Finally, upon apprehension, defendant testified that he was running from the police because there were warrants out for his arrest. The entire episode took around two minutes. Taken together, the evidence is such that a rational trier of fact could conclude that defendant entered the dwelling with the intent to continue to disobey a lawful order and that the entrance was part of a single continuous episode of flight. The trial court did not err in denying defendant's motion for judgment of acquittal on first-degree burglary.[5]

Affirmed.

---

[5] We emphasize the specificity of our holding in this case; it applies only to a charge of first-degree burglary where the intended crime upon unlawful entry into a building is interfering with a police officer by refusing to obey a lawful order to stop.