STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS PAUL WERNER, JR.,
*Defendant-Appellant.*

Tillamook County Circuit Court
111102; A149780

383 P3d 875

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Hadlock, Chief Judge, and Wollheim, Senior Judge.

## DUNCAN, P. J.

Defendant took property from the complainant's house at a time defendant had permission to be in the house. For that conduct, defendant was charged with theft and burglary, among other crimes. At trial, defendant conceded that he was guilty of theft, but moved for a judgment of acquittal on the burglary charge, arguing that, because he had permission to be in the house, he had not entered or remained unlawfully, as required for a burglary conviction. The trial court denied defendant's motion, and a jury found defendant guilty of theft and burglary. Defendant appeals, assigning error to the trial court's denial of his motion for a judgment of acquittal. Because the state failed to present legally sufficient evidence that defendant entered or remained unlawfully, we reverse defendant's burglary conviction, remand for resentencing, and otherwise affirm.

When reviewing a trial court's denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact could find every element of the crime beyond a reasonable doubt. ORS 136.445; *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Stated in accordance with that standard, the relevant facts are as follows.

Defendant was hired by the complainant, Goff, to work at Goff's house. The work included repairing an interior staircase and replacing an exterior deck. While defendant was working on the house, Goff and his wife left for approximately one week. To give defendant access to the house during that time period, Goff turned off the house alarm and gave defendant a house key. Defendant had Goff's permission to do "whatever he needed to do" to complete the work. Defendant was free to use the bathroom and telephone and to help himself to the contents of a refrigerator on the first floor of the house.

While Goff was away, he communicated with defendant on a daily basis, and defendant sent him photographs of the projects. When Goff returned, defendant had completed the repairs on the interior staircase, but was still in the process of replacing the deck, which was as expected.

Upon his return, Goff discovered, over the course of a few days, that property was missing from the house, including coins, a bottle of whiskey, frozen deer and elk meat, a spotting scope, and three shotguns. Defendant later admitted taking the property.

The state charged defendant with first-degree burglary, ORS 164.225 (Count 1), first-degree theft, ORS 164.055 (Count 2), and three counts of felon in possession of a firearm, ORS 166.270 (Counts 3, 4, and 5). Defendant tried the burglary and theft counts to a jury, and he tried the felon in possession counts to the court.

After the state presented its case-in-chief in the jury trial, defense counsel moved for a judgment of acquittal on the burglary count. Defense counsel conceded that defendant was guilty of theft, but argued that defendant was not guilty of burglary because defendant had Goff's permission to be in the house. Specifically, defense counsel argued:

"[T]o have a burglary you would have to begin essentially with trespass. And the state would have to demonstrate that [defendant] had entered and remained unlawfully in Mr. Goff's residence.

"I think it's clear from the evidence so far, that [defendant] had permission to be in the residence. Mr. Goff had given him the keys. Mr. Goff testified that [defendant] had permission to enter the residence and do whatever he needed to do.

"And, incidentally, just beyond having him there to work on the house, he invited him to help himself to one of the refrigerators in the house, and it was kind of expected that he would * * * do things like use the bathroom and telephone if necessary and whatnot. * * * There didn't seem to be any limitation on what parts of the house he could be in[.]

"He disarmed the alarm so that [defendant] wouldn't have to deal with that. So I think it's clear that [defendant] entered the premises lawfully and with the permission of Mr. Goff."

Regarding whether defendant unlawfully remained in Goff's house, defense counsel argued:

"If the State is going to argue that the consent to be on the premises is automatically revoked when a person commits some crime, in this case a theft, I think what the State is arguing is that there is some sort of constructive revocation of consent which is *** not something that exists under the case law.

"* * * * *

"Essentially, burglary is a trespass for the purpose of committing a crime. And if any licensed or privileged person who enters the premises lawfully automatically commits a burglary by committing a crime on those premises then, really, virtually any crime committed on private property becomes a burglary, which I don't think is the intent of the burglary statute."

In response, the state argued that, if a person enters a building lawfully, but then engages in unauthorized conduct in the building, the person is guilty of burglary. Regarding the facts of this case, the state argued that defendant was guilty of burglary in this case because he exceeded the scope of Goff's consent by engaging in conduct other than Goff had authorized:

"This is a tradesman, you know. This isn't, you know, a family friend or a relative, you know, something like that. Clearly the consent was to enter for particular purposes.

"He wasn't allowed to—It wasn't like you can move in while we're gone. *** The victim here wants specific work done. There are discussions about specific work.

"This isn't go into my house and just fix anything you find that's messed up. It's we want this room painted and we want to paint it this color. I want [the] deck done. I want it done this way. I want this stairstep to stop squeaking.

"These are very specific grants of authority for entry. And to say that by telling someone if they get thirsty, it's okay to get a beer out of the bottom fridge, somehow makes it okay for them to decide to steal your guns while they're inside there, that's quite a leap."

Thus, the state's theory was that defendant was guilty of burglary because he engaged in unauthorized conduct—the

taking of property—in Goff's house; in other words, the state's theory was that defendant was guilty of burglary because he committed theft inside the house.

In reply, defense counsel reiterated that the question was "not whether there was a theft." Instead, the question was "whether or not there was a burglary. \* \* \* That's a separate crime." In support of his argument, defense counsel cited *State v. Felt,* 108 Or App 730, 816 P2d 1213 (1991), *rev den,* 313 Or 75 (1992).

In *Felt,* the defendant was charged with burglary and other crimes after he entered his former girlfriend's apartment with her permission and then, after she refused his request for a kiss and pushed him away, assaulted her. At trial, the defendant moved for a judgment of acquittal on the burglary charge, asserting that the state had failed to prove that he unlawfully remained in the apartment. The trial court denied the motion, a jury convicted the defendant, and the defendant appealed. On appeal, we affirmed, reasoning that the evidence in the case "would support the inference that, when [the victim] reacted against the defendant, she impliedly revoked her permission that he remain on the premises." *Id.* at 733. In other words, we affirmed because there was sufficient evidence to support a finding that the victim "withdrew her consent" and that, after that point, defendant was "no longer privileged to remain in the residence." *Id.* at 734.

In this case, defense counsel argued to the trial court that, in *Felt,* "[t]he court could have said \* \* \* [the defendant] had permission to come in and use the restroom, use the phone or whatever it was, but \* \* \* he didn't have consent to attack his ex-girlfriend. But that's not \* \* \* the reasoning they used to confirm the conviction."

The trial court denied defendant's motion for judgment of acquittal, reasoning that a jury could find that defendant had remained unlawfully in Goff's house by engaging in conduct beyond what Goff authorized. Focusing on whether defendant had Goff's permission to take property from the house, the trial court explained:

"[I]f the jurors were to believe the State's case, the idea that he could take guns and, you know, maybe if he made himself a sandwich, I guess, maybe—but the extent of the things that he took would be—I think the jury could find easily that he knew he wasn't supposed to do those things.

"Maybe if he crashed out one night in front of the TV, got really tired and didn't drive home or something slightly different than the consent. But this is so far beyond any consent that a homeowner would give somebody working in their home, I don't think you need an actual person in the home telling him he couldn't do that. So I'm going to deny the motion."

Thereafter, the jury convicted defendant of the burglary and theft counts, and the trial court convicted defendant of the felon in possession of a firearm counts. This appeal followed.

On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal on the burglary count, and the parties renew the arguments they made in the trial court. Notably, in the trial court, the state did not argue that defendant exceeded any temporal or spatial limits on Goff's consent, and it does not make any such arguments in its brief on appeal. That is, the state does not argue that defendant entered or remained in the house outside of the hours that he was authorized to be there to perform work, nor does it argue that he entered or remained in any areas of the house other than those he was authorized to be in for work or other purposes.[1] Instead, the state argues that defendant remained in Goff's house unlawfully because he exceeded his license to be in the house when he stole Goff's property. Specifically, the state argues, "Defendant's license was tied directly to the carpentry projects" and, therefore, "[w]hen defendant *acted outside* that purpose, he became a trespasser." (Emphasis in original.)

---

[1] At oral argument, the state suggested, for the first time, that defendant may not have been authorized to enter the Goff's bedroom, from which the coins were taken, because he had completed his work there before the Goffs left town. Even assuming we could consider this theory that was not argued below, because the record lacks any evidence of the layout of the house—including the locations of bathrooms and telephones—the record is not sufficient to affirm the denial of defendant's motion for judgment of acquittal on that theory. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 20 P3d 180 (2001) (stating requirements for affirming a trial court ruling on an alternative basis).

Given the parties' arguments, the initial question in this case is whether engaging in unauthorized conduct in a building constitutes unlawfully remaining in the building for the purposes of the burglary statute. Resolution of the question requires examination of the criminal trespass and burglary statutes, which are related to each other. Our goal is to discern the legislature's intent, and to do so, we examine the text of the statutes in context, along with relevant legislative history, and, if necessary, canons of construction. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009).

Accordingly, we turn to the criminal trespass and burglary statutes relevant to this case: ORS 164.245, which defines second-degree criminal trespass; ORS 164.215, which defines second-degree burglary; ORS 164.225, which defines first-degree burglary; and ORS 164.205, which provides the definitions for the burglary and criminal trespass statutes. The statutes were enacted as part of the 1971 Legislative Assembly's comprehensive revision of Oregon's Criminal Code. As the Supreme Court has recounted, "That revision began with the creation, in 1967, of the Criminal Law Revision Commission," which drafted a proposed code and commentary that it presented to the legislature. *Gaines*, 346 Or at 178. We "look[] to both the commentary and the discussions that preceded the adoption of the final draft as legislative history for the resulting laws." *Id.* (quoting *State v. Lonergan*, 344 Or 15, 25 n 3, 176 P3d 374 (2008) (Kistler, J., dissenting; citation omitted)).

The criminal trespass and burglary statutes were drafted together as a chapter of the proposed code. Although the statutes have been amended since their enactment, the portions of the statutes relevant to this case have remained the same.

ORS 164.245 defines the basic crime of criminal trespass. It provides, in part, that a person commits the crime of second-degree criminal trespass "if the person enters or remains unlawfully in a motor vehicle or in or upon premises." ORS 164.245(1). The purpose of the criminal trespass statute is "the protection of one's property from unauthorized intrusion." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code,

Final Draft and Report § 141, 147 (July 1970) (hereafter "Commentary"). Second-degree criminal trespass is a Class C misdemeanor. ORS 164.245(2).

ORS 164.215 defines the basic crime of burglary. It provides that, subject to exceptions not relevant here, a person commits the crime of second-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215(1). Thus, as defined by ORS 164.215, burglary is an aggravated form of criminal trespass. As the drafters of the statute explained, "The basic definition of burglary *** amounts to nothing more than a form of criminal trespass with two aggravating factors: (1) the premises invaded constitute a 'building'; and (2) the intruder enters or remains with intent to commit a crime therein." Commentary § 136 at 144. Correspondingly, the Supreme Court has stated that criminal trespass is the "requisite primary element" of burglary. *State v. Hartfield*, 290 Or 583, 594, 624 P2d 588 (1981). "To prove a burglary, the state must establish a criminal trespass and the aggravating factors which raise the trespass to a burglary." *Id.* Second-degree burglary, the lowest degree of burglary, is a Class C felony. ORS 164.215(2).

A burglary is a first-degree burglary, as defined by ORS 164.225, if the state establishes additional aggravating factors. As relevant here, ORS 164.225 provides, in part, that a person commits first-degree burglary "if the person violates ORS 164.215 and the building is a dwelling[.]"[2] ORS 164.225(1). First-degree burglary is a Class A felony. ORS 164.225(2).

The phrase "enter or remain unlawfully" is defined by ORS 164.205(3), which provides, in part, "'Enter or remain unlawfully' means *** [t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the

---

[2] A person also commits first-degree burglary "if in effecting entry or while in a building or in immediate flight therefrom, the person *** [i]s armed with a burglary tool or theft device *** or a deadly weapon; *** [c]auses or attempts to cause physical injury to any person;" or "[u]ses or threatens to use a dangerous weapon." ORS 164.225(1).

entrant is not otherwise licensed or privileged to do so[.]"[3] Thus, a person commits criminal trespass on premises that are not open to the public if the person enters or remains when the person is not "otherwise licensed or privileged to do so[.]"

As the text, context, and legislative history of the burglary statutes establish, burglary is an aggravated form of criminal trespass. "[T]he underlying legislative purpose of burglary * * * is to punish trespass [of a building] for the purpose of committing a crime." *State v. Pitts*, 259 Or App 372, 376, 314 P3d 324 (2013), *rev den*, 354 Or 840 (2014). Given that purpose, completion of the intended crime is not required. As we have explained, "Intent is necessarily prospective; a person cannot at one moment in time intend to commit an action that occurred at an earlier moment." *Id.* Thus, "a burglary is complete the moment a person [trespasses] with the intent to commit a crime, necessarily not yet committed, therein[.]" *Id.*

From the text, context, and legislative history of the burglary statutes, we draw two conclusions that guide our analysis in this case. First, the basic crime of burglary has three elements: criminal trespass, of a building, with the intent to commit a crime therein. Second, burglary is a separate crime from, and necessarily precedes, the commission of the intended crime. Again, the legislature's intent in enacting the burglary statutes was "to punish trespass [of a building] for the purpose of committing a crime." *Pitts*, 259 Or App at 376.

The state's argument in this case—that if a person with permission to be in a building commits an unauthorized

---

[3] In full, ORS 164.205(3) provides:

"'Enter or remain unlawfully' means:

"(a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so;

"(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge;

"(c) To enter premises that are open to the public after being lawfully directed not to enter the premises; or

"(d) To enter or remain in a motor vehicle when the entrant is not authorized to do so."

crime in the building, the person is guilty not only of the crime, but also of burglary—is inconsistent with the legislature's definition of burglary. It fails to treat burglary as a separate, earlier crime than the crime intended to be committed in the building. In cases like this one, the state's argument essentially makes burglary and commission of the intended crime one and the same, even though the legislature intended burglary to be separate from (and not dependent upon) the subsequent commission of the intended crime. In addition, it eliminates the requirement that the criminal trespass coincide with the intent to commit a crime. The state reasons that, if a person commits a crime in a building, the person becomes a trespasser and, apparently retroactively, a burglar. If, as the state argues, the commission of a crime is what causes a person who is otherwise licensed to be present in a building to become a trespasser, then the person is not trespassing with the intent to commit that crime. As we observed in *Pitts*, "a person cannot at one moment in time intend to commit an action that occurred at an earlier moment." 259 Or App at 376.[4]

The state's argument is also inconsistent with the legislative history of the burglary statute; it would significantly expand the scope of burglary from what it was before the enactment of the 1971 Criminal Code, when burglary required "breaking and entering," *former* ORS 164.220-164.240 (1969), *repealed by* Or Laws 1971, ch 743, § 432, and there is no indication that the legislature intended to expand the crime to that extent. If we were to accept the state's argument, a person who committed the crime of harassment, ORS 166.065, against another person in a dwelling would be guilty not only of harassment, a Class B misdemeanor, but also of first-degree burglary, a Class A felony. Nothing in the criminal trespass and burglary statutes themselves or in the history of those statutes indicates that the legislature intended such a result, which would have significant effects

---

[4] For the timing to work, the state would have to argue that the formation of the intent to commit a crime makes a person a trespasser. The state does not make that argument, for good reason. It would conflate two of the three elements of burglary: the criminal trespass and the intent to commit a crime. And, it would expand the scope of the burglary statute to reach persons who, while lawfully present in a building make a mental plan to commit a crime but take no action on that plan.

not only on individual defendants, but on the entire criminal justice system, in terms of the numbers and related costs of prosecution and incarcerations. It is unlikely that, had the legislature intended to make such a change, it would have done so without discussion.[5]

Because it is inconsistent with the legislature's definition of burglary and because it would greatly expand the crime of burglary despite the absence of any indication that the legislature intended such an expansion, we reject the state's argument that commission of a crime in a building, in and of itself, converts a lawful entry into an unlawful remaining. That is, we reject the argument that the commission of a crime on private property automatically makes a person a trespasser and, by extension, a burglar.

We note that the definition of "enter or remain unlawfully" in ORS 164.205(3) was adopted from the New York Penal Law in 1971, Commentary § 135 at 143, and New York courts have rejected the same argument that the state makes in this case. Although the New York decisions are not binding on us, their reasoning is persuasive.

In *People v. Crowell*, 470 NYS2d 306, 308 (1983), the court held that a contractor, who had been hired to paint a vacant house and had been given the key to the house, could not be convicted of burglary or any lesser-included charge of trespass for taking property from the house. The court explained that, although the owner of the house did not "intend that his permission to enter or remain would extend to accommodate a theft[,] *** the privilege to be within the premises is not negated by the formulation of criminal

---

[5] Indeed, the legislative history of the definition of "enter or remain unlawfully" suggests that the term "remain unlawfully" was intended to give persons in charge of public buildings "a way to remove people who entered lawfully but remained unlawfully." *State v. Lucio-Camargo*, 172 Or App 298, 306, 18 P3d 467 (2001), *decision vac'd by* 344 Or 391 (2002) (citing Tape Recording, House Committee on Criminal Law and Procedure, SB 40, Mar 2, 1971, Tape 4, Side 1 (statement of Donald Paillette)). Specifically, it was directed at "'sit-in kind of situations, particularly [in] university buildings, public buildings, courthouses, [and] office buildings[.]'" *Id.* (first and second brackets in original). As a drafter explained, "[Y]ou could have a lawful entry, but it could become burglary because it became an unlawful remaining that coincided with the intent to commit some crime in that building." *Id.* at 307.

intent, or even the undertaking of criminal actions therein." *Id.* (citations omitted). The court further explained:

> "Upon reflection, it will be seen that not terminating one's license or privilege upon his commission of criminal conduct makes both practical and theoretical sense. A rule to the contrary would mean that an intoxicated house guest who loses his temper and intentionally smashes a vase becomes a burglar. Innumerable like examples can be imagined. Such was not the intent of the legislature in creating the burglary statutes, all of which have trespassorial conduct as one essential element. *Clearly, to constitute a burglary, this conduct must exist separately from and independently of the criminal intent element."*

*Id.* (emphasis added).

Similarly, in *People v. Zee,* 477 NYS2d 965, 967 (1984), the court explained:

> "Criminal liability for unlawfully remaining is designed to apply to situations in which a person enters with genuine license and privilege but remains after the termination of the license or privilege. * * * The People reason that a privilege to remain is necessarily conditioned on lawful purpose and behavior, because nobody consents to criminal acts on his or her premises. Thus, once a person with license engages in criminal behavior, consent and hence license is revoked, and the person who entered lawfully thereafter remains unlawfully.

> "This reasoning impermissibly broadens the scope of liability for burglary, making a burglar of anyone who commits a crime on someone else's premises. It erroneously merges two separate and independent elements that must coexist to establish burglary: First, the trespassory element of entry or remaining without license or privilege; Second, intent to commit a crime. An intrusion without license or privilege (unlawful entry) is the distinguishing element, the essence of burglary. It must be established separately and distinctly from the intention to commit a crime. The mere fact that a crime was committed or was intended is an insufficient basis for finding that the entry or remaining was without privilege or authority."

(Citation omitted.); *see also People v. Alvarez,* 382 NYS2d 952, 953 (1976) (concluding that authorization to enter an

apartment was not "rendered inoperative by an intent to steal formulated at some indefinite point in time"); *People v. Ennis,* 322 NYS2d 341 (1971) (holding that the defendant's license to enter a building open to the public was not extinguished by his criminal intent).

We agree with the New York courts that "the mere fact that a crime was committed * * * is an insufficient basis for finding that the entry or remaining was without privilege or authority." *Zee,* 477 NYS2d at 967.

Given that legal conclusion, we turn to the question of whether, in this case, the state presented sufficient evidence that defendant unlawfully entered or remained in Goff's house, and we conclude that it did not. The state's only argument regarding the criminal trespass element of burglary was that defendant unlawfully remained by committing theft. For the reasons discussed above, that argument is unavailing.

The state did not present any evidence that Goff revoked his consent before defendant committed the theft. Thus, this case is distinguishable from *Felt,* 108 Or App at 733, in which we held that trial court did not err by denying the defendant's motion for judgment of acquittal on a burglary charge because the state had presented evidence that the defendant remained in his former girlfriend's apartment after she implicitly revoked her permission to be there by physically pushing him away.

And, as discussed above, the state did not present any evidence that defendant violated any temporal or spatial limits on this authority. Thus, this case is distinguishable from one in which, for example, a contractor's authority to be in a house is limited, explicitly or implicitly, to certain hours or certain areas, and it is also distinguishable from *State v. Evans,* 267 Or App 762, 341 P3d 833 (2014).

In *Evans,* we concluded that the trial court did not err by denying the defendant's motion for judgment of acquittal on a burglary count, where the defendant received permission to enter the victim's apartment to use a bathroom, but then stole property from a bedroom. 267 Or App at 767. We noted that the victim had given the defendant

explicit directions to the bathroom, which was down a hallway. *Id.* at 766-67. We also noted that "a wall separated the hallway where the bathroom was located from the bedroom area." *Id.* at 767. Accordingly, we concluded that the trial court did not err by denying the defendant's motion for judgment of acquittal because "[a] rational jury could have found that defendant had no license or privilege to enter or remain in the victim's bedroom, *the area in which he committed the theft.*" *Id.* (emphasis added). *See also State v. Holte,* 170 Or App 377, 380, 12 P3d 553 (2000) (evidence that defendant entered a bedroom from which he was expressly excluded was sufficient to establish criminal trespass element of burglary).

In sum, we conclude that the commission of a crime does not, in and of itself, convert a lawful entry into an unlawful remaining, and we further conclude that, because the only evidence that the state presented regarding the criminal trespass element of the charged burglary in this case was that defendant committed theft, the trial court erred by denying defendant's motion for judgment of acquittal on the burglary count.

Conviction for burglary reversed; remanded for resentencing; otherwise affirmed.