Submitted November 25, 2015, affirmed November 23, 2016, petition for review denied March 30, 2017 (361 Or 311)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JASON M. ANGELO,
*Defendant-Appellant.*

Washington County Circuit Court
C131615CR; A156765

385 P3d 1092

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and DeHoog, Judge.

## DEHOOG, J.

Defendant appeals a judgment of conviction for first-degree burglary of an occupied dwelling, ORS 164.225(1).[1] In his first assignment of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal, asserting that the state failed to prove that he entered or remained unlawfully in a building within the meaning of ORS 164.205(3)(a).[2] The state argues that defendant exceeded the scope of the spatial limitation on his license to be in the building, which, in the state's view, is sufficient to render his presence unlawful. For the reasons set forth below, we conclude that the state produced sufficient evidence to permit a rational trier of fact to find that defendant trespassed in a dwelling, a predicate to first-degree burglary. In his second assignment of error, defendant asserts that the trial court plainly erred in failing to strike the "occupied dwelling" crime subcategory classification from the burglary charge, because, he argues, the building was not occupied at the time of the burglary. OAR 213-018-0025(2). We disagree with defendant and, accordingly, we affirm.

"When reviewing a trial court's denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact could find every element of the crime beyond a reasonable doubt." *State v. Werner*, 281 Or App 154, 156, 383 P3d 875 (2016). The following material facts are stated in accordance with that standard.

Defendant worked for a gas fireplace repair company, Home Comfort Design (Home Comfort). The victim, Chiapuzio, called Home Comfort to repair his gas fireplace and discussed the details of the work with the owner of the company, including where the work would need to be done: on the first floor and in a crawl space beneath that floor.

---

[1] Defendant was also convicted of second-degree theft, but does not challenge that conviction on appeal.

[2] Under ORS 164.205(3)(a), "[e]nter or remain unlawfully" means "[t]o enter or remain upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so."

Home Comfort sent defendant and a coworker, Larson, to Chiapuzio's home to repair the fireplace. They could not complete the work in one visit and left, intending to complete the work another day. Later that evening, Chiapuzio noticed that $100 was missing from a drawer in a side table on the first floor. Suspecting that either defendant or Larson had taken the money, Chiapuzio called the owner of Home Comfort, and the two of them decided to plant some "bait money" in the side table drawer and secretly videotape that area of the home to see whether the defendant and Larson, upon their return, would take the money. The owner agreed to reimburse Chiapuzio if his suspicions proved correct. Defendant and Larson returned to the home to complete the repair. When they arrived, Chiapuzio confirmed the details of the work and discussed the areas of the home that they would need to access. Later, after Chiapuzio had left, and while Larson was either in the bathroom or in the crawl space, Chiapuzio's video camera captured footage of defendant first taking $100 from the first-floor side table and an iPhone from a kitchen drawer, and then walking in the direction of the stairs leading to the second floor of the home. After the contractors finished the job and left, Chiapuzio discovered that those items were missing, as was an iPod that had been upstairs. Chiapuzio contacted Home Comfort, who ultimately fired defendant.

Defendant was charged with first-degree burglary involving an occupied dwelling, ORS 164.225,[3] and second-degree theft, ORS 164.045. At trial, he conceded the theft count, but tried the burglary count to a jury. After the state presented its case-in-chief, defendant moved for a judgment of acquittal on the burglary count, arguing that the state had not proved that defendant had trespassed, a predicate to any burglary charge. Defendant summarized and responded to the state's trespass theory as follows:

> "I'm assuming that [the state] is arguing that by coming into the home, [defendant] had a license and privilege

---

[3] In relevant part, ORS 164.225(1) provides that a "person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling." In turn, ORS 164.215(1) states, in pertinent part, that "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

to be in the areas of the home where the work was located and that, therefore, by entering into another portion of the home that that was immediately an unlawful violation of the license and privilege to be there.

"* * * * *

"I think what [the state] is going to say is that at some point in time [defendant] violated his license and privilege to be in the home and at that point any theft was during an unlawful remaining, and, therefore, it becomes a burglary.

"I don't think that is accurate. * * * [I]f what [the state is] saying [is] that by going upstairs that's the triggering of the violation of the license and privilege, * * * I think two things need to have occurred.

"The first is Mr. Chiapuzio needed to put some parameters on where in the house these people could go. * * * Mr. Chiapuzio didn't say, hey, you can't go upstairs under any circumstance. * * * [S]o, I don't think we have any parameters * * * to say what the exact license and privilege and locations within the home were."

The state clarified its theory of the burglary as follows:

"A crime that happens in a house isn't a burglary just because it happens in a house. It has to be accompanied by a concurrent trespass. * * * The question is whether when the defendant goes upstairs, * * * he's trespassing.

"* * * * *

"Going upstairs when you're called to do a job on the first floor and in the crawl space is a trespass. When accompanied by an intent to steal, it is a burglary."

The trial court denied defendant's motion for judgment of acquittal on the burglary count, concluding that

"[t]his is an interesting area * * * because it's true that normally we think of it being the unknown stranger that does this and so there is never any question about [whether] this person [would] be allowed in my house versus the person that's invited in with parameters on what they are [there] for, which was to do this work.

"* * * * *

"I find the testimony of [the state's witnesses] credible and I rely on it, and I do believe that a reasonable and rational trier of fact could find the defendant guilty of the burglary as well as the theft."

The jury convicted defendant of the burglary count and found that the burglary had occurred in an "occupied dwelling." On appeal, the parties largely renew the arguments they made below.[4] Because the state clearly articulated at trial that its theory of criminal trespass was that defendant lawfully entered Chiapuzio's home, but then unlawfully remained within that dwelling, we focus our analysis on whether defendant unlawfully remained in Chiapuzio's home when he went upstairs.[5]

We begin our analysis by construing the burglary and related trespass statutes so as to effectuate the legislature's intent. In pursuit of that goal, we examine the text of the statutes in context, together with any relevant legislative history and, if necessary, applicable canons of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Further, any prior construction of the statutes by the appellate courts is relevant to our analysis of the statutes' text. *State v. Bryan*, 221 Or App 455, 459, 190 P3d 470 (2008), *rev den*, 347 Or 270 (2009).

Under ORS 164.215(1), "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein." If the building at issue is a dwelling, the crime is elevated to burglary in the first degree, a Class A felony. ORS 164.225. By definition, criminal trespass is an essential element of burglary. *State v. Hartfield*, 290 Or 583, 594, 624 P2d 588 (1981). Criminal trespass is defined in relevant part by ORS 164.245(1) as a "person enter[ing] or remain[ing] unlawfully *** in or upon premises." Thus, at

---

[4] At trial, defendant also argued that his license or privilege to remain on the premises extended to committing the theft because Chiapuzio anticipated that defendant would commit theft when he returned with Larson to complete the work on the fireplace. Defendant does not reprise that argument on appeal.

[5] Because our focus is on whether defendant unlawfully remained in the home, we need not address defendant's argument that the upstairs portion of the house is not a separate unit or building under the burglary statute and, thus, defendant's presence upstairs did not constitute a separate unlawful entry.

its essence, burglary comprises three elements: (1) unlawfully entering or remaining in or upon; (2) a building; and (3) with the intent to commit a crime therein. *Werner*, 281 Or App at 162. ORS 164.205(3)(a) provides that to "enter or remain unlawfully" means:

> "To enter or remain in or upon the premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so."

In this case, the state argues that Chiapuzio expressly limited defendant and Larson's license or privilege to remain in his home when he discussed with them which areas of the home they would need to access in order to complete the fireplace repair. The owner of Home Comfort testified at trial that, when Chiapuzio called him to request the repair, Chiapuzio informed him that the fireplace was located on the main floor of the home and that the gas line was accessible through a crawl space underneath the home. Furthermore, Chiapuzio testified at trial that, when defendant and Larson arrived at his home, they discussed which areas of the home the workers would need to access, including the fireplace on the first floor, the crawl space underneath the home, and the garage to plug in tools. He also specifically gave defendant and Larson permission to use the bathroom on the first floor. Thus, the state argues that defendant's license or privilege to be in Chiapuzio's home was expressly limited to those areas discussed with defendant in order to complete the repair to the fireplace. Defendant counters that he was granted permission to enter and remain in the house as a whole. In defendant's view, Chiapuzio did not expressly limit which areas of the home he could enter because Chiapuzio did not tell defendant that he was prohibited from going into any particular area. Specifically, defendant argues that Chiapuzio did not say to him, "You cannot go upstairs under any circumstance."

We have previously considered whether a person, who has lawfully entered a building, but who subsequently exceeds a spatial limitation on the license or privilege to be in that building, unlawfully remains on premises within the meaning of the burglary statute. For example, in *State v. Evans*, 267 Or App 762, 763, 341 P3d 833 (2014),

we concluded that the trial court had not erred in denying the defendant's motion for judgment of acquittal on a first-degree burglary charge where the defendant had exceeded the express limits of the victim's license to be in her apartment to use the bathroom. In that case, the victim gave the defendant, a stranger, permission to use her bathroom, and told him exactly where it was located. *Id.* When, instead, the defendant went into a separate area that the victim used as a bedroom and stole her purse from a nightstand, the state charged the defendant with first-degree burglary. *Id.* at 764. In moving for judgment of acquittal, the defendant argued that he could not be convicted for burglary, because the victim had given him permission to be in her apartment and had never expressly or implicitly revoked that consent. *Id.* The trial court rejected that argument, reasoning that the defendant had himself revoked his consent by committing a crime in the victim's apartment. *Id.* at 765.

On appeal, the defendant argued that he had not lost his license to be in the apartment merely by forming the intent to commit a crime therein. *Id.* The state did not defend the trial court's rationale but, instead, argued that the defendant had had a limited license to be in the victim's apartment, and that he had exceeded that license by entering and remaining in the area she used as a bedroom. *Id.* at 765-66. We agreed. *Id.* at 766-67. Relying in part on *State v. Holte*, 170 Or App 377, 12 P3d 553 (2000), we reasoned that the victim had expressly limited the license or privilege she had afforded the defendant by telling him that he could go to the bathroom and giving him explicit instructions on where to find it. *Evans*, 267 Or App at 766. Given those circumstances, we readily concluded that a rational juror could infer that the defendant had no license or privilege to enter the victim's bedroom area, and that the trial court, therefore, had not erred. *Id.*

Similarly, in *Holte*, we upheld the defendant's burglary conviction when he exceeded the limits of an express agreement that allowed him to live in an extra bedroom in the victim's home on the condition that the defendant not enter the victim's bedroom. 170 Or App at 379. When the defendant was later arrested in possession of property

stolen from the victim's bedroom, the state prosecuted him for burglary. *Id.* at 380. As in *Evans*, the defendant argued at trial that there had been no burglary, because the victim had given the defendant the right to be in his entire house— since the victim's bedroom was not a separate dwelling, there had been no unlawful entry. *Id.* The state responded that, whether or not the defendant's entry into the home had been lawful, he had remained there unlawfully from the moment he entered the victim's bedroom—from which he had been expressly excluded—with the intent to commit a crime therein. *Id.*

We affirmed, but relied on a slightly different rationale. We reasoned:

> "To enter or remain unlawfully under the burglary statutes requires proof of an unprivileged or unlicensed entry or stay. Defendant's right to be in the house was conditioned on the requirement that he not enter [the victim's] bedroom. Thus, a rational jury could have found that, once defendant entered [the victim's] bedroom in violation of the oral rental agreement, he no longer was licensed or privileged to remain in the house."

*Id.* at 382. Accordingly, we concluded that the trial court had properly allowed the jury to determine whether, by remaining in the victim's home with the intent to commit theft, the defendant was guilty of burglary in the first degree. *Id.*

As in *Evans*, Chiapuzio in this case authorized defendant to be in specific areas of his home related to the specific purpose of repairing his gas fireplace. The second floor of the home was not one of the areas that defendant was licensed or privileged to enter. It is immaterial that Chiapuzio did not expressly tell defendant that he was not permitted to go upstairs. By telling defendant the areas he was expected to access—the first floor, the crawl space, and the garage—and by specifically allowing defendant to use the first floor bathroom, Chiapuzio placed clear limits on which areas of the house defendant was permitted to enter. *See Evans*, 267 Or App at 766 (by giving the defendant permission to use the bathroom, the victim had expressly limited the defendant's license or privilege to that part of her apartment).

And, as in *Holte*, the fact that Chiapuzio gave defendant permission to *enter* his home does not preclude the state from proving that he committed a burglary by unlawfully *remaining* in the home when he exceeded the spatial limitations that Chiapuzio placed on that permission. Under the circumstances of this case, a rational jury could determine that, once defendant exceeded those limits by going upstairs—an area entirely unrelated to his purpose for being given access to the home—he was trespassing, because "he no longer was licensed or privileged to remain in the house." 170 Or App at 382.[6] Accordingly, the trial court did not err by denying defendant's motion for judgment of acquittal on the first-degree burglary charge.

We turn to defendant's second assignment of error, contending that the trial court plainly erred by failing to strike, *sua sponte,* the allegation that the burglary occurred in an "occupied dwelling," which, under the sentencing guidelines, rendered his burglary conviction a crime category 8 offense. OAR 213-018-0025(2). At the conclusion of trial, defendant moved for "judgment notwithstanding the verdict" on the "occupied dwelling" classification. On appeal, defendant correctly acknowledges that his post-verdict motion was inapplicable and insufficient to preserve his assignment of error, but asks us to review as plain error the trial court's failure to strike the "occupied dwelling" classification on its own motion before submitting his case to the jury. *See State v. Metcalfe*, 328 Or 309, 315, 974 P2d 1189 (1999) (concluding that a motion for judgment of acquittal must be made before a verdict is rendered). For its part, the state contends that it is by no means beyond dispute that the evidence was legally insufficient to support the "occupied dwelling" enhancement factor; accordingly, the state argues, the trial court did not plainly err.

ORAP 5.45(1) provides that "no matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * * provided that

---

[6] In reaching that conclusion, we note that this is not a case in which the state's theory at trial was that defendant's decision to commit the crime of theft within Chiapuzio's home rendered defendant's previously lawful presence within the home unlawful. *See, e.g., Werner*, 281 Or App at 164 (rejecting that theory).

the appellate court may consider an error of law apparent on the record." An error is "apparent on the record" if it satisfies three criteria: (1) the error is one "of law"; (2) it is "apparent," that is, "the legal point is obvious, not reasonably in dispute"; and (3) the error appears "on the face of the record," that is, the reviewing court "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990). If those three requirements are met, we then consider various additional factors in deciding whether we will exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

Defendant's assertion of plain error would require us to construe the Oregon Sentencing Guidelines. In relevant part, first-degree burglary is ranked under the guidelines as a crime category 8 offense if "[t]he offender did not cause or threaten physical injury to the victim and did not possess a deadly weapon" but "[t]he offense was committed in an *occupied dwelling*." *Oregon Sentencing Guidelines Implementation Manual* 12 (Sept 1989) (emphasis added). The crime seriousness classifications consider, among other things, "the harm or threat of harm to the societal interests the legislature intended to protect" including "protecting the individual from personal assault" and "protecting individual rights to property." Oregon Criminal Justice Council Commentary, *Oregon Sentencing Guidelines Implementation Manual* 12 (Sept 1989).

For purposes of the sentencing guidelines, "occupied" means that "a person must be inside the building at the time of the burglary." *State v. Johnson*, 116 Or App 252, 256, 841 P2d 643 (1992). Defendant argues that the state's theory of the case was that the burglary occurred while Chiapuzio was away from the home, and that, therefore, the home was unoccupied for purposes of this sentencing classification. The state counters that it did not matter whether Chiapuzio was home, because evidence of Larson's presence either inside the home or in the crawl space underneath the home at the time of the burglary is sufficient for the jury to find that the home was occupied. And, in fact, Larson's testimony at trial indicated that defendant was out of sight

and could have gone upstairs while Larson was in the crawl space or using the bathroom on the first floor. Thus, there was sufficient evidence from which the jury could find that Larson was in the home at the time that defendant committed the burglary, a conclusion defendant does not dispute.

In light of that evidence, defendant's second assignment of error raises only a legal question that does not require us to look outside the record or choose between competing inferences. Thus, in this case, the potential for plain error review turns exclusively on whether the assigned error is "apparent," that is, whether "the legal point is obvious, not reasonably in dispute."[7] *Brown*, 310 Or at 356. And, as to that inquiry, we agree with the state that the legal point defendant asks us to consider is not beyond reasonable dispute.

Defendant's contention is that, for purposes of OAR 213-018-0025(2)(b), a dwelling is not "occupied" unless the occupant is the resident of the dwelling, but that conclusion is by no means self-evident. Further, we see no indication from the text and context of the rule that it was intended only to protect homeowners or other residents from the threat of harm created by burglary, and not to protect other persons who may be in the home when it is burglarized. Finally, no appellate court has previously considered whether the presence of a third party such as Larson may satisfy the "occupied dwelling" component of OAR 213-018-0025(2)(b). *See State v. Webster*, 280 Or App 217, 223, 380 P3d 1165 (2016) (noting that absence of appellate authority is one indication that an allegation of error is not apparent (citation omitted)). In light of those considerations, the trial court did not plainly err.

Affirmed.

---

[7] Were we to conclude that defendant's second assignment of error otherwise qualified for plain error review, we would, of course, still need to decide whether it was appropriate to exercise our discretion to undertake that review. *Ailes*, 312 Or at 382 n 6.