TOOKEY, J.
*645 Defendant appeals a judgment of conviction for, among other offenses, one count of first-degree burglary. ORS 164.225 ; ORS 164.215. On appeal, in his first assignment of error, defendant challenges the trial court's denial of his motion for a judgment of acquittal *512 (MJOA) on the burglary counts that were subsequently merged into a single conviction.[1] Defendant contends that he had "license" to enter and remain in the dwelling in which the jury found he intended to commit crimes. The state contends that, because defendant exceeded the scope of his license or privilege to enter and remain in the dwelling by bringing a person into the dwelling that defendant was not authorized to bring with him, his entry and remaining was not licensed or privileged and, consequently, was unlawful. For the reasons set forth below, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant's entry and remaining was unlawful. Accordingly, we affirm.
When we review a trial court's denial of an MJOA, we view the evidence in the light most favorable to the state. State v. Rodriguez , 283 Or. App. 536, 537, 390 P.3d 1104, rev. den. , 361 Or. 543, 397 P.3d 35 (2017). We state the facts consistently with that standard.
Sorenson rented an apartment in Glide, Oregon. At the time of the burglary in this case, Sorenson was allowing a married couple, ZM (the husband) and KM (the wife), to stay with him at the apartment. In the months leading up to the burglary, KM had been "involved in a check fraud identity theft charge," and had identified three other individuals-at least two of whom were friends of defendant-to police as having also been involved in that conduct.
Sorenson was also friends with defendant. In fact, Sorenson had given defendant "full access" to his apartment, which meant that, according to Sorenson, it "wasn't abnormal for [defendant] to be waiting for [Sorenson] inside [Sorenson's apartment] when [Sorenson] got off work." The access that Sorenson had given to defendant to enter and remain in Sorenson's apartment did not, however, include *646 defendant bringing another individual, Finnell, with him. Specifically, during defendant's trial, Sorenson provided the following testimony:
"[Deputy District Attorney]: When you testified that you gave [defendant] permission to go to and from your house, that did not include bringing Mr. Finnell with him?
"[Sorenson]: No, it did not."
Sorenson also testified during defendant's trial that, unlike defendant, Finnell was not "okay to go and come" from Sorenson's apartment and was not allowed in Sorenson's apartment. Sorenson explained that "every time I hang out with [Finnell] my chances of going to jail go[ ] up three hundred percent" and that Finnell had previously attacked Sorenson on Sorenson's porch.
Defendant and Finnell were friends. However, during defendant's trial, defendant provided the following testimony regarding his view of Finnell's disposition:
"[Deputy District Attorney]: You explained that you've known * * * Finnell since first grade. You described him as wayward, flighty, you have a soft spot for him. Was he ever violent? Did you ever know him to be violent?
"[Defendant]: To say the least.
"[Deputy District Attorney]: I don't understand what that means. Yes, you did know him to be violent?
"[Defendant]: * * * Finnell has always been kind of violent.
"[Deputy District Attorney]: Would you characterize him as unpredictable?
"[Defendant]: I'm sure most people would. I wouldn't characterize him as unpredictable.
"[Deputy District Attorney]: How would you characterize him?
"[Defendant]: At times a loose cannon, more or less. Unstable."
Additionally, defendant testified during his trial that Sorenson's former romantic partner and Finnell had been "kind of promiscuous together," and that had, at some point, caused tension between Sorenson and Finnell.
*647 Prior to the burglary, defendant and Finnell were drinking together at defendant's house. That day, Finnell was "under the influence of a lot of alcohol and a lot of drugs." During defendant's trial, Finnell testified *513 about himself that he was using drugs and was high that day because he is "always on drugs and high. And usually drunk." Later that day, defendant brought Finnell to Sorenson's apartment.
When they arrived at the apartment, KM was sleeping on the couch. Neither Sorenson nor ZM were present. KM awoke to people talking and saw defendant and Finnell in the apartment with her. The door to Sorenson's apartment did not "really lock" and they had, apparently, let themselves in. Defendant "started to tell [KM] that there were these people [who] were trying to hurt his family, hurt his wife, and that [he] needed * * * [ZM's] help." KM then left the apartment to go to a neighbor's house to try to find a phone so that she could call ZM. While she was searching for someone with a phone, ZM returned to Sorenson's apartment. Upon seeing ZM return, KM returned as well.
Defendant and Finnell then told ZM that someone was threatening defendant and was going to kill defendant's wife. Defendant requested that ZM come with him and Finnell to defendant's house. The story defendant and Finnell were telling, however, was not adding up to ZM, and ZM began to question defendant and Finnell.
When it became clear that ZM was not going to go with defendant and Finnell voluntarily, defendant punched him in the face, knocking him to the ground. Defendant then climbed on top of ZM, pulled out a knife, and began "yelling a bunch of stuff," such as "[y]ou narked us out," "[y]ou shouldn't tell on us," and "[w]e should kill you. You're dead." While this was occurring, Finnell restrained KM.
When ZM struggled to escape, Finnell ran over to assist defendant and began to put handcuffs on ZM. At that point, KM was able to flee. She left the apartment, stopped a passing semi-truck, and contacted law enforcement.
Subsequently, defendant was arrested and charged with, among other crimes, three counts of first-degree *648 burglary, ORS 164.225. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the burglary counts, arguing that the state had failed to establish that defendant did not have permission to enter or remain in Sorenson's residence. Specifically, defendant argued that Sorenson was the "lawful possessor of the residence," that Sorenson had not testified during the state's case-in-chief, and that the married couple did not have "a right to determine who c[ould] be [in the apartment] lawfully or unlawfully." The state responded that the married couple lived at the apartment, and that they had a right to determine "who is excluded and who is not in the absence of Mr. Sorensen." The trial court denied the motion, reasoning that,
"at the time of this incident, * * * with the evidence presented in the light most favorable to the state, [the married couple] had control over the premises, so I do believe there's sufficient evidence to present the three counts of burglary in the first degree to the jury with regard to the motion for judgment of acquittal."
Defendant then presented his case-in-chief, during which Sorenson testified, as discussed above, that, although defendant had permission "to go to and from" Sorenson's apartment, that permission "did not include bringing Mr. Finnell with him." Additionally, during defendant's case-in-chief, defendant provided the following testimony in which defendant acknowledged that, on the day of the burglary, defendant was aware that Sorenson did not want Finnell at Sorenson's apartment:
"[Deputy District Attorney]: And were you aware that * * * Sorensen did not want * * * Finnell at his home when you took him by the house?
"[Defendant]: That's why [Finnell] stood outside the whole time to begin with * * *."
At the close of defendant's case in chief, defendant renewed his MJOA, again arguing that Sorenson was the "lawful possessor of th[e] residence[ ]," and also arguing that Sorenson had provided testimony reflecting that defendant had permission to be at the apartment. The state responded *649 that Sorenson's permission did not allow defendant to enter with Finnell. The trial court again denied defendant's MJOA, concluding that there was sufficient evidence to go forward *514 to the jury. The jury then found defendant guilty of, among other crimes, two counts of burglary in the first degree, which the trial court merged into a single conviction.
On appeal, defendant argues that the trial court erred when it denied his MJOA on the burglary counts. Defendant's argument is twofold: First, defendant argues that his entry or remaining in Sorenson's apartment was lawful, because he had Sorenson's permission to enter and remain in the apartment and, under ORS 164.205(3)(a), which defines "enter or remain unlawfully" for purposes of the burglary and criminal trespass statutes, "an invitation from an owner" establishes that the entrant was "licensed or privileged" to enter or remain on property. Defendant acknowledges that Sorenson's permission to enter and remain in the apartment did not authorize defendant to bring Finnell into the apartment-and defendant does not argue that he was unaware of this restriction-but contends that "the relevant aspects of license [under ORS 164.205(3)(a) ] are the physical locale of a 'premises' and the time of defendant's entry." Consequently, according to defendant, although a license or privilege to enter or remain on property may be restricted by temporal or spatial limits, a license or privilege may not restrict a person's conduct. Thus, defendant contends that because "the license" allowed defendant onto Sorenson's property at the time that defendant was there, "even if defendant engaged in conduct inconsistent with his license, that issue is immaterial to whether he entered or remained unlawfully."
Second, defendant contends that the state failed to provide evidence that "Sorenson's license did not authorize defendant to be on the property even if defendant brought Finnell." Defendant points out that, "Sorenson testified that defendant was not authorized to bring Finnell, but Sorenson did not testify that defendant's license was revoked if he brought Finnell." Thus, defendant reasons that, although Sorenson's testimony might establish that Finnell had *650 committed burglary, the trial court should have granted defendant's MJOA on the burglary counts, because defendant had a license to be on the property.[2]
In response, the state argues that,
"a rational trier of fact could easily conclude that defendant did not have Sorenson's permission to enter the home. By bringing Finnell with him, defendant exceeded the scope of Sorenson's permission and thus was not licensed or privileged to enter or remain in the home. Thus, a rational trier of fact could have found the essential elements of the crime of first-degree burglary beyond a reasonable doubt, and the trial court correctly denied defendant's [MJOA]."[3]
Where, as here, the dispute on review of a ruling on an MJOA centers on the meaning of the statute defining the offense, the issue is one of statutory construction that we review for legal error. State v. Hunt , 270 Or. App. 206, 210, 346 P.3d 1285 (2015). After we resolve the legal issue, we determine whether a rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt. State v. Bowen , 280 Or. App. 514, 516, 380 P.3d 1054 (2016) ; see also Hunt , 270 Or. App. at 209, 346 P.3d 1285 ("We generally review the denial of a motion for a judgment of acquittal by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." (Internal quotation marks omitted.)).
We write to set forth our understanding of how the legal concepts of "license" and "privilege"
*515 apply to the criminal trespass and burglary statutes, as well as to explain why we do not share defendant's view of how the criminal trespass and burglary statutes apply to the facts of this case.
*651 In defendant's first argument, concerning ORS 164.205(3)(a), the legal questions presented are (1) whether a "license" or a "privilege" to enter and remain on another's property may impose only "temporal or spatial limits," as defendant contends, or whether a person can grant a license or privilege to enter premises that is conditioned on or restricted to specified conduct, and (2) if the latter, whether a conditional or restricted consent to enter and remain on premises creates a license or privilege to do so only in so far as the condition or restriction is complied with.[4]
Resolution of those questions requires us to construe the criminal trespass and burglary statutes, which are related to each other. State v. Werner , 281 Or. App. 154, 161, 383 P.3d 875 (2016), rev. den. , 361 Or. 312, 393 P.3d 1173 (2017) (noting "[t]he criminal trespass and burglary statutes were drafted together"). In reviewing those statutes, our goal is to discern the legislature's intent, and to do so, we examine the text of the statutes in context, along with relevant legislative history, and, if necessary, canons of construction. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
ORS 164.245 defines the basic crime of criminal trespass. It provides, in relevant part, that a person commits the crime of second-degree criminal trespass "if the person enters or remains unlawfully * * * in or upon premises." ORS 164.245(1). The purpose of the criminal trespass statute is " 'the protection of one's property from unauthorized intrusion.' " Werner , 281 Or. App. at 161, 383 P.3d 875 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 141, 147 (July 1970)).
*652 ORS 164.215 defines the basic crime of burglary. It provides that, subject to exceptions not relevant here, a person commits the crime of second-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215(1).[5] "Thus, as defined by ORS 164.215, burglary is an aggravated form of criminal trespass" and the "basic crime of burglary" has three elements: "[1] criminal trespass, [2] of a building, [3] with the intent to commit a crime therein." Werner , 281 Or. App. at 162-63, 383 P.3d 875.
In this case, defendant does not argue that Sorenson's apartment did not constitute a "building" or that he did not enter or remain with "intent to commit a crime therein." Instead, the issue before us is whether his "entry or remaining" in Sorenson's apartment was unlawful-i.e. , whether his conduct constituted criminal trespass. See State v. Hartfield , 290 Or. 583, 594, 624 P.2d 588 (1981) (criminal trespass is the "requisite primary element" of burglary).
The phrase "enter or remain unlawfully" is defined by ORS 164.205(3), which provides, in part:
"To enter or remain in or upon the premises when the premises, at the time of such *516 entry or remaining, are not open to the public and when the entrant is not otherwise licensed and privileged to do so."[6]
ORS 164.205(3)(a).[7] Thus, "a person commits criminal trespass on premises that are not open to the public if the person *653 enters or remains when the person is not otherwise licensed or privileged to do so." Werner , 281 Or. App. at 163, 383 P.3d 875 (internal quotation marks omitted).
By defining "enter or remain unlawfully" in the way that it did, the legislature "intended to ground the crime of criminal trespass in traditional property law, specifically the law of trespass to property." State v. Hall , 181 Or. App. 536, 539, 47 P.3d 55 (2002). Accordingly, we have turned to relevant principles of the common law of trespass to determine whether an individual had authority to grant to a defendant a "license" or "privilege," as those terms are used in ORS 164.205(3)(a). See State v. Schneider , 246 Or. App. 163, 168, 265 P.3d 36 (2011), rev. den. , 351 Or. 545, 274 P.3d 184 (2012) (applying "common-law principles of trespass" to determine that a "tenant * * * had authority to invite guests [including the defendant] to the common areas of [an] apartment complex" and, therefore, the defendant was acting "within the scope of his invitation," and was "privileged to be in the [apartment complex's] parking lot"). And, "consistent[ ] with principles of common-law trespass," we have concluded that an invitation generally is sufficient to establish that the entrant was licensed or privileged to enter within the meaning of ORS 164.205(3)(a). Hall , 181 Or. App. at 539, 47 P.3d 55. We have also concluded that an invitation onto property can create a license or privilege that is restricted to entry into certain areas of a home. See, e.g ., State v. Angelo , 282 Or. App. 403, 411, 385 P.3d 1092 (2016), rev. den. , 361 Or. 311, 393 P.3d 1169 (2017) ("[T]he fact that [the victim] gave defendant permission to enter his home does not preclude the state from proving that he committed a burglary by unlawfully remaining in the home when he exceeded the spatial limitations that [the victim] placed on that permission." (Emphases in original.)).
Turning to the issues presented in this case, we do not find anything in the text of ORS 164.205(3)(a) -or any other relevant statute-that supports defendant's contentions that the "relevant aspects of license are the physical *654 locale of a 'premises' and the time of defendant's entry" and that whether a person engages in "conduct inconsistent with [a] license" is immaterial to whether that person entered or remained unlawfully. Although defendant correctly points out that the text of ORS 164.205(3)(a) references both spatial ("in or upon") and temporal ("at the time of such entry or remaining") concepts, we understand those phrases to relate to the premises at issue rather than specifying the type of licenses and privileges that are recognized under ORS 164.205(3)(a).[8] Contrary to defendant's argument, ORS 164.205(3)(a) refers generally to the legal concepts of "license" and "privilege," with no apparent restrictive modifier as to those concepts.
We next turn to the relevant principles of the common law of trespass to help us resolve defendant's arguments. See, e.g. , *517 Schneider , 246 Or. App. at 166, 265 P.3d 36 ; see also Fresk v. Kraemer , 337 Or. 513, 520, 99 P.3d 282 (2004) (noting "[s]tatutory context includes * * * the preexisting common law"). In this case, we rely on our case law and on the Restatement (Second) of Torts to describe common trespass principles, including those related to consent, as nothing in our cases suggests any tension between Oregon trespass law and the common law as the Restatement describes it. Marlow v. City of Sisters , 281 Or. App. 462, 470, 383 P.3d 908 (2016). We conclude that those principles effectively foreclose defendant's first argument.
Under the common law, a "license" is a "revocable privilege to use land in the possession of another." Sproul et al. v. Gilbert et al. , 226 Or. 392, 403, 359 P.2d 543 (1961). It is a "justification for the acts which it authorizes to be done" and "will furnish a justification for an act which would otherwise be a trespass." Schiffmann v. Hickey et ux. , 101 Or. 596, 601, 200 P. 1035 (1921) (internal quotation marks omitted). However, "[a] conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with."
*655 Restatement (Second) of Torts § 168 (1965) ; see also Restatement § 892A (1979) ("To be effective, consent must be * * * to the particular conduct, or to substantially the same conduct."); Strandholm v. Barbey , 145 Or. 427, 440-41, 26 P.2d 46 (1933) (a license "merely authorizes the licensee to go upon the land for the purposes specified in the instrument creating the license" (emphasis added)); Hager v. Tire Recyclers, Inc. , 136 Or. App. 439, 443, 901 P.2d 948, adh'd to as modified on recons. , 138 Or. App. 120, 906 P.2d 842 (1995), rev. den. , 323 Or. 690, 920 P.2d 549 (1996) ("To establish that a possessor has consented to the entry of another, there must be evidence of 'willingness in fact' that the 'particular conduct' that constitutes entry may occur." (Quoting Restatement §§ 892, 892A.)). Put another way, "[o]ne whose presence on land is pursuant to a consent which is restricted to conduct of a certain sort, is a trespasser if he intentionally conducts himself in a different manner." Restatement § 168 comment d.
The unrestricted references to the legal concepts of "license" and "privilege" in ORS 164.025(3)(a), coupled with the common-law rule that a license or privilege to enter property can be conditional or restricted to specified conduct, as set forth above, lead us to conclude that a person can grant a license or privilege to enter premises that is conditioned on or restricted to specified conduct. Further, we conclude that, consistent with the common law, a conditional or restricted consent to enter or remain on premises creates a license or privilege to do so only in so far as the condition or restriction is complied with. To conclude otherwise would fail to recognize that the "right to invite or to exclude [others] 'is the most nearly absolute of the many property rights that flow from the ownership or other rightful possession of land.' " Hall , 181 Or. App. at 540, 47 P.3d 55 (quoting Robert A. Cunningham et al. , The Law of Property § 7.1, 411 (1984)). Accordingly, we reject defendant's first argument that the "relevant aspects of license are the physical locale of a 'premises' and the time of defendant's entry" and that whether a person engages in "conduct inconsistent with [a] license" is immaterial to whether that person entered or remained unlawfully.
We next address defendant's second argument that "the state failed to provide evidence that Sorenson's license *656 did not authorize defendant to be on the property even if defendant brought Finnell" because, while "Sorenson testified that defendant was not authorized to bring Finnell, * * * Sorenson did not testify that defendant's license was revoked if he brought Finnell."
Again, we turn to the relevant principles of the common law of trespass to help us resolve defendant's argument. Under the common law, whether a person's consent "includes * * * particular conduct" depends on the "terms and reasonable implications of the consent given." Restatement § 892A comment d. And, furthermore,
"[e]ven when no restriction is specified the reasonable interpretation of the consent may limit it to acts at a reasonable time and place, or those reasonable in other respects. For example, a landowner's permission for a picnic on his land will normally *518 not be taken to give consent to a picnic at three o'clock in the morning or to a drunken brawl."
Restatement § 892A comment g.
Additionally, as noted above, "[a] conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with" and "[o]ne whose presence on land is pursuant to a consent which is restricted to conduct of a certain sort, is a trespasser if he intentionally conducts himself in a different manner." Restatement § 168 ; Restatement § 168 comment d. Further, an "actor's privilege to enter land created by consent * * * is terminated by * * * the doing of any act * * * by which the consent is restricted." Restatement § 171; see also Restatement § 168 comment d (further explaining termination of a consent by the doing of an unauthorized act).
In analyzing defendant's argument, we note that "[w]e will reverse a trial court's denial of a motion for judgment of acquittal only where no rational trier of fact could find all of the elements of the crime beyond a reasonable doubt." State v. Shewell , 178 Or. App. 115, 118, 35 P.3d 1096 (2001), rev. den. , 334 Or. 491, 52 P.3d 1057 (2002). Accordingly, the issue we must resolve is whether a rational trier of fact could have found, beyond a reasonable doubt, that Sorenson's consent for defendant to enter and remain in Sorenson's apartment included a restriction that defendant not bring Finnell with *657 him, and that defendant violated that restriction by bringing Finnell.
We conclude that a rational trier of fact could have made such findings based on, among other evidence, (1) Sorenson's testimony that defendant's permission to enter Sorenson's apartment did not include defendant bringing Finnell with him and defendant's acknowledgement that, on the day he brought Finnell to Sorenson's apartment, he was aware that Sorenson did not want Finnell at the apartment, (2) testimony indicating that Finnell was a "violent" and "unstable" person, whose presence made it more likely that Sorenson would go to jail, and (3) testimony regarding Sorenson and Finnell's relationship, including testimony that Finnell had attacked Sorenson.
Additionally, as noted above, on appeal defendant does not argue that he was unaware of this restriction on Sorenson's consent for defendant to enter and remain in Sorenson's apartment. Nor would such an argument have been successful, given defendant's acknowledgement that he was aware, on the day of the events in question, that Sorenson did not want Finnell at Sorenson's apartment; Sorenson's testimony that defendant's permission to enter Sorenson's apartment did not include defendant bringing Finnell into the apartment; and our standard of review, which requires us to examine the evidence in the light most favorable to the state, accepting reasonable inferences and credibility choices.
Accordingly, we reject defendant's second argument that "the state failed to provide evidence that Sorenson's license did not authorize defendant to be on the property even if defendant brought Finnell" because "Sorenson did not testify that defendant's license was revoked if he brought Finnell." As noted above, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Sorenson's consent for defendant to enter and remain in Sorenson's apartment included a restriction that defendant not bring Finnell with him into the apartment-that is, that defendant's license or privilege to enter and remain in Sorenson's apartment did not authorize defendant to enter or remain in Sorenson's apartment if defendant brought *658 Finnell-and that defendant violated that restriction by entering and remaining in Sorenson's apartment with Finnell. Consequently, such a rational trier of fact could have found, beyond a reasonable doubt, that defendant's entry and remaining in Sorenson's apartment was not licensed or privileged.
For the reasons set forth above, we conclude that the trial court did not err when it denied defendant's MJOA.
Affirmed.

Defendant has withdrawn his second assignment of error.

Defendant also argues, without analysis or elaboration, that the denial of his MJOA violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We decline to address that undeveloped argument. See State v. Harrison , 290 Or. App. 766, 768 n. 3, 417 P.3d 513 (2018) (declining to address undeveloped claim of constitutional error).

The state also argues that "a rational trier of fact could conclude that the [married couple], who were living in the home, had the right to exclude defendant from it." In light of our conclusion below, we need not consider that argument.

In State v. Werner , 281 Or. App. 154, 161, 383 P.3d 875 (2016), rev. den. , 361 Or. 312, 393 P.3d 1173 (2017), which defendant relies on in his briefing, we considered the question "whether engaging in unauthorized conduct in a building constitutes unlawfully remaining in the building for the purposes of the burglary statute." We concluded that it does not when "the only evidence that the state present[s] regarding the criminal trespass element of the charged burglary * * * [is] that defendant committed" a crime in the building, because "the commission of a crime does not, in and of itself, convert a lawful entry into an unlawful remaining." Id. at 168, 383 P.3d 875. In this case, the state does not argue that it was defendant's commission of a crime in Sorenson's apartment that rendered his entry and remaining unlawful. Rather, the state argues, and, as explained below, we agree, that a rational trier of fact could have found that defendant committed criminal trespass when he brought Finnell into Sorenson's apartment in violation of the restriction on his license or privilege to enter and remain in the apartment.

A burglary is a first-degree burglary, as defined by ORS 164.225, if the state establishes additional aggravating factors. As relevant here, ORS 164.225 provides that a person commits first-degree burglary "if the person violates ORS 164.215 and the building is a dwelling[.]" ORS 164.225(1).

ORS 164.205 has been amended since the conduct that gave rise to the charges in this case occurred. See Or. Laws 2015, ch. 10, § 1. Because that amendment does not affect our analysis, all references to the statute throughout this opinion are to the current version.

In full, ORS 164.205(3) provides:
" 'Enter or remain unlawfully' means:
"(a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so;
"(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge;
"(c) To enter premises that are open to the public after being lawfully directed not to enter the premises; or
"(d) To enter or remain in a motor vehicle when the entrant is not authorized to do so."

ORS 164.205 includes a separate definition of "open to the public." ORS 164.205(4) provides that " '[o]pen to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required."