Argued and submitted December 30, 2021; conviction on Count 2 reversed, otherwise affirmed February 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD ALLEN McLAUGHLIN,
*Defendant-Appellant.*

Linn County Circuit Court
19CR34413; A173537

505 P3d 1088

Defendant was convicted of first-degree burglary, ORS 164.225(1), based on his unlawfully entering R's house with the intent to commit theft. On appeal, defendant contends that the trial court erred in denying his motion for judgment of acquittal, because the evidence was legally insufficient to convict him of burglary. In particular, defendant contends that the evidence was insufficient to find that he lacked permission to enter R's house, where the evidence was that R allowed defendant to come and go freely from the house. The state counters that the evidence was legally sufficient because R's permission was implicitly limited to defendant coming and going for social purposes, not to commit a crime, such that entering to commit a crime exceeded the scope of defendant's license. *Held*: The trial court erred in denying defendant's motion for judgment of acquittal. Defendant was free to come and go from R's house. Although no one intends to be the victim of a crime when inviting someone into their home, it does not follow that the invitee's subjective intent to commit a crime renders the entry a criminal trespassing and thus a burglary. Because there was no evidence that defendant's entry into R's home was unlawful, beyond the fact that he intended to commit a crime when he entered, R could be convicted of any crimes that he committed in R's house but could not be convicted of burglary.

Conviction on Count 2 reversed; otherwise affirmed.

DeAnn L. Novotny, Senior Judge.

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

AOYAGI, J.

Conviction on Count 2 reversed; otherwise affirmed.

**AOYAGI, J.**

Defendant was convicted of first-degree burglary, ORS 164.225(1), based on an incident in which he and another man went into R's house to commit theft. On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the burglary charge. The only issue is whether the evidence was legally sufficient to prove that defendant unlawfully entered R's house. For the following reasons, we agree with defendant that the evidence was legally insufficient to prove that element of burglary. We therefore reverse the burglary conviction.

## FACTS

We view the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Fuller*, 303 Or App 47, 48, 463 P3d 605 (2020) (internal quotations marks and brackets omitted). We state the facts accordingly. Except as otherwise noted, all of the relevant facts come from the victim R's testimony.

Defendant and R were friends. According to R, defendant had permission to "come and go" into R's house as he pleased. Defendant visited "on a daily basis" and would enter the house without knocking. It was normal for R to come home and find defendant there. Defendant "always watched [R's] house for [R]." There were other friends who also had permission to come and go from the house as they pleased. More generally, there were usually a "bunch of people" at R's house. People would show up unannounced. R would leave people in the house while he went out. R's guests brought other people to the house "all the time" and sometimes let in people while R was out.

Bates was R's girlfriend and defendant's friend. She had been living at R's house since July 2018, when she and R met and began dating. At the end of January 2019, Bates "went missing," but her belongings were still at R's house.

Anderson was someone whom R had met approximately three times. They were not friends, and Anderson

had once pulled a gun on R. However, R did not have any "beef" with Anderson, and, as of early February 2019, he "would not have objected" to Anderson coming to the house with defendant and "probably" would have invited him in if he knew about it. According to Anderson, Anderson started dating Bates around the time she went "missing" from R's house, although there is no evidence R knew about it.

Strader and R were sort of friends, and defendant and Strader had been together at R's house on many occasions. In January 2019, defendant, Anderson, and Strader were together at a big party at R's house.

On February 2, 2019, defendant, Anderson, and Strader drove to R's house around midnight. R had gone for a walk and was not home when they arrived. Strader stayed outside, while defendant and Anderson went into the house. Inside the house, defendant and Anderson began gathering personal property. Most of the items belonged to Bates, but a few items belonged to R. There was a security camera in R's bedroom that "everybody" knew about. Footage from the camera shows Anderson wearing a wig as he and defendant "bagged" property. Upon returning from his walk, R saw Strader outside but did not interact with him, and R went into the house. R heard someone yell, "Get on the ground." R ran into a spare bedroom and closed the door. Anderson, who was carrying a gun, shot through the door, striking R with a bullet. Defendant, Anderson, and Strader fled the scene, while R ran to the neighbor's house for help.

Defendant was indicted. He waived jury, and the charges against him were tried to the court. At the close of the state's evidence, defendant moved for judgment of acquittal on the burglary charge, which the trial court denied. In his closing statement, defendant revisited the legal sufficiency of the evidence, including arguing that there was no evidence that he was not authorized to enter R's house. The state argued that there was evidence of unlawful entry because, although defendant was "allowed in all the time" to R's house, "common sense says he wouldn't have been allowed in for the purpose of committing crimes." The state argued that people were welcome to "hang out" at R's house but not to come there to commit crimes and that one could

reasonably infer from the fact that Anderson was wearing a wig that he and defendant came to R's house with the intent to commit a crime, not for social purposes.

The court found defendant guilty of first-degree burglary (Count 2). Defendant appeals that conviction. He argues that he was entitled to a judgment of acquittal on the burglary charge because the evidence was legally insufficient to establish the element of unlawful entry.[1]

## ANALYSIS

A person commits first-degree burglary if the person "enters or remains unlawfully" in a building with the intent to commit a crime therein and, as relevant here, the building is a dwelling. *See* ORS 164.215(1) (it is second-degree burglary when a person "enters or remains unlawfully in a building with intent to commit a crime therein"); ORS 164.225(1) (second-degree burglary rises to first-degree burglary if the building is a "dwelling," or if the person is armed in a certain way, causes or attempts to cause physical injury to any person, or uses or threatens to use a dangerous weapon).

The "enter or remain unlawfully" element of burglary derives from criminal trespass, which in turn is rooted in the common law of property trespass. *State v. Hall*, 181 Or App 536, 539, 47 P3d 55 (2002). A person commits criminal trespass if a person "enters or remains unlawfully *** in or upon premises." ORS 164.245(1). "'Enter or remain unlawfully' means:

"(a)   To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so;

---

[1] Defendant assigns error to the denial of his "motion for judgment of acquittal." It is clear from his briefing that defendant means his implied motion in closing statement, not his express motion at the close of the state's case. *See State v. Gonzalez*, 188 Or App 430, 431, 71 P3d 573 (2003) (in a bench trial, arguing in closing that the evidence is legally insufficient is equivalent to moving for judgment of acquittal). We reiterate the importance of clearly identifying the ruling being challenged. *See* ORAP 5.45(4)(a)(i). Here, defendant has adequately done so, and the state acknowledges as much.

  "(b)　To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge;

  "(c)　To enter premises that are open to the public after being lawfully directed not to enter the premises; or

  "(d)　To enter or remain in a motor vehicle when the entrant is not authorized to do so."

ORS 164.205(3).

  Criminal trespass is the "requisite primary element" of burglary. *State v. Hartfield*, 290 Or 583, 594, 624 P2d 588 (1981). At "its essence, burglary comprises three elements: (1) unlawfully entering or remaining in or upon; (2) a building; and (3) with the intent to commit a crime therein." *State v. Angelo*, 282 Or App 403, 408, 385 P3d 1092 (2016), *rev den*, 361 Or 311 (2017).

  Every burglar thus necessarily intends to commit some other crime—whether it be theft, assault, or literally any other crime from the pettiest to the most terrible—but it is the act of criminal trespass that makes it *burglary*. *Hartfield*, 290 Or at 594 (criminal trespass is "transformed into a burglary" when the premises invaded are a building and the trespasser enters or remains with intent to commit a crime). The legislature has adjudged that *trespassing* to commit *any* crime creates risks and harms greater than either the trespassing itself or the intended crime itself, warranting a separate crime with more serious penalties when the two come together. *See* Tape Recording, Criminal Law Revision Commission, May 27, 1968, Tape 15, Side 2 (discussing the additional risks and dangers attendant to burglary). For example, criminal trespass into a dwelling is a Class A misdemeanor, ORS 164.255(1)(a). Theft ranges from a Class C misdemeanor to a Class B felony, depending mostly on the value of items stolen. ORS 164.043 to 164.057. However, criminal trespass into a dwelling with intent to commit any degree of theft is burglary, a Class A felony, ORS 164.225.

  To prove that defendant committed burglary, the state therefore had to prove not only that defendant entered or remained in R's house with the intent to commit a crime,

but that he was not "licensed or privileged" to be in R's house.

A person who is invited into a dwelling by the property owner or a lawful occupant is "licensed or privileged" to enter and does not commit criminal trespass by entering. *State v. Klein*, 267 Or App 348, 351, 342 P3d 89 (2014). Conversely, a person who lacks license or privilege to enter a dwelling commits criminal trespass by entering it. ORS 164.205(3)(a). Further, a person who lawfully enters may unlawfully remain if the person fails to leave after license is revoked—*see State v. Hopkins*, 305 Or App 425, 433, 469 P3d 238 (2020), *rev den*, 367 Or 559 (2021) (discussing cases)—or if the person goes into an area of the building where the person is not authorized to go—*see Angelo*, 282 Or App at 410 (where a repairman only had permission to be on the first floor of an apartment, he "unlawfully remained" by going onto the second floor); *State v. Evans*, 267 Or App 762, 763-64, 341 P3d 833 (2014) (where a stranger only had permission to use the bathroom, he "unlawfully remained" by going into the bedroom); *State v. Holte*, 170 Or App 377, 379-80, 12 P3d 553 (2000) (where a person renting a room knew that he was not allowed in the home-owner's bedroom, he "unlawfully remained" by going into that bedroom).

In this case, defendant was convicted of first-degree burglary based on his *unlawfully entering R's house* with the intent to commit theft. The question is whether the evidence was legally sufficient on that point. Defendant does not contest that R's house is a dwelling, nor does he contest that there was sufficient evidence to find that he entered with the intent to commit theft. And, for its part, the state does not contest that the issue is unlawful entry, not unlawful remaining. To the extent that the state mentions unlawful remaining, it is only as an extension of unlawful entering. That is, in the state's view, defendant lacked authority to enter R's house, and nothing happened after entry to change his authority, so his initial trespass continued for the duration of the incident.

Before addressing the state's main argument regarding unlawful entry, we first dispatch a secondary argument

that the state makes for the first time on appeal. In its answering brief, the state argues briefly that defendant exceeded the scope of his license to enter R's home by bringing Anderson with him. No legal authority is cited, but the leading case for such an argument is *State v. Endicott*, 296 Or App 644, 656-57, 439 P3d 510, *rev den*, 365 Or 557 (2019), in which we held that there was sufficient evidence of criminal trespass to support a burglary conviction where the defendant entered the victim's home with another person whom the defendant knew was not welcome there. Putting aside that the state did not make such an argument in the trial court, we agree with defendant that this case is readily distinguishable from *Endicott*. To the extent that defendant had permission to enter R's house on his own, this record would not allow a finding that defendant lacked permission to enter with Anderson, such that bringing Anderson with him rendered an otherwise lawful entry unlawful.[2]

That brings us to the state's primary theory of unlawful entry: that defendant's entry into R's house was "unlawful" because he entered to commit a crime, rather than to socialize. The state, which bore the burden of proving unlawful entry, acknowledges that defendant was free to come and go from R's house. R testified specifically to giving defendant permission to come and go as he pleased, and he testified more generally to an essentially open-door policy, with people coming to the house at any time of day or night, showing up unannounced, entering the house when R was not there, remaining in the house after R left, and bringing or letting in other people. The state argues, however, that the "scope" of defendant's license was limited to social purposes. As argued to the trial court (and reiterated on appeal), the state's position is that defendant was "allowed in all the time" to R's house and that people generally were welcome to "hang out" at R's house, but that R's consent was implicitly limited to social purposes and excluded criminal purposes.

───────────

[2] R's own testimony precludes such a finding. Further, we disagree with the state's suggestion that Anderson wearing a wig while in the room with a security camera permits a reasonable inference that defendant knew that Anderson was not welcome at R's house. Such an inference would be too speculative on this record.

We are unpersuaded by the state's argument. Preliminarily, we note that defendant having permission to enter for "social purposes" is simply another way of saying that he had permission to enter for "noncriminal purposes," as defendant was welcome to come and go even when no one else was present. With that in mind, we conclude that allowing a finding of unlawful entry on this record would be contrary to the burglary statutes and to our construction of those statutes in *State v. Werner*, 281 Or App 154, 383 P3d 875 (2016), *rev den*, 361 Or 312 (2017), and its progeny.

As to the statutes, burglary requires that a person "enters or remains *unlawfully* in a building *with intent to commit a crime therein.*" ORS 164.215(1) (second-degree burglary) (emphases added); *see also* ORS 164.225(1) (incorporating same element for first-degree burglary). Entering or remaining unlawfully is a separate element from intending to commit a crime. *Angelo*, 282 Or App at 408. If intending to commit a crime was enough in and of itself to establish the unlawfulness of the entry or remaining, the word "unlawful" would approach surplusage. Entering or remaining in a building with the intent to commit a crime would automatically render the entry or remaining "unlawful," except in those narrow circumstances where the property owner was complicit in the crime, such as if someone invited a person into their home to engage in illegal drug activity, to commit a crime against another person, or the like. We are unpersuaded that the legislature intended the burglary statutes to sweep up the vast majority of crimes that take place inside buildings. *Cf. Werner*, 281 Or App at 164 (rejecting the state's proposed construction of what it means to "enter or remain unlawfully," in part because "it would significantly expand the scope of burglary from what it was before the enactment of the 1971 Criminal Code, when burglary required 'breaking and entering,'" despite there being no indication in the legislative history "that the legislature intended to expand the crime to that extent").

To make the same point in a different way, it is reasonable to infer that no one wants to be a victim of theft and that no one welcomes people onto their property with the intent to invite theft. In virtually any fact scenario, it would be reasonable to infer that the "scope" of consent to

enter was not intended to include theft. Were we to approach "license or privilege" in ORS 164.205(3)(a) with such an understanding of "scope," virtually any theft committed in a building would also become burglary. Indeed, virtually any crime committed in a building would also become burglary, unless committed by the owner or tenant.

Much of our thinking in this case echoes that in *Werner*. In *Werner*, 281 Or App at 156, the defendant was authorized to enter a house to do carpentry work. While in the house, he stole things. We reversed the defendant's conviction for first-degree burglary, concluding that his motion for judgment of acquittal should have been granted. We disagreed with the state that, because the defendant's license to be in the house was tied to the carpentry projects, he became a trespasser when he "acted outside that purpose." *Id*. at 164 (emphasis omitted). We explained that treating the "commission of a crime in a building, in and of itself, [as] convert[ing] a lawful entry into an unlawful remaining" was "inconsistent with the legislature's definition of burglary" and "would greatly expand the crime of burglary despite the absence of any indication that the legislature intended such an expansion." *Id*. at 165. For example, "a person who committed the crime of harassment, ORS 166.065, against another person in a dwelling would be guilty not only of harassment, a Class B misdemeanor, but also of first-degree burglary, a Class A felony." *Id*. at 164. We found "[n]othing in the criminal trespass and burglary statutes themselves or in the history of those statutes indicat[ing] that the legislature intended such a result, which would have significant effects not only on individual defendants, but on the entire criminal justice system, in terms of the numbers and related costs of prosecution and incarcerations." *Id*. at 164-65. We considered it "unlikely that, had the legislature intended to make such a change, it would have done so without discussion." *Id*. at 165. Ultimately, we "reject[ed] the argument that the commission of a crime on private property automatically makes a person a trespasser and, by extension, a burglar." *Id*.

We have applied *Werner* on multiple occasions. In *State v. Berndt*, 282 Or App 73, 77-78, 386 P3d 196 (2016), *rev den*, 361 Or 311 (2017), we held that the defendant was

entitled to a judgment of acquittal on six counts of second-degree burglary, where he stole personal items from other people's lockers at a private gym. The state argued that the defendant "exceeded the scope of his license to be there, granted by [the gym] as a consequence of his gym membership, when he broke into other members' lockers." *Id*. at 76. We rejected that argument, reasoning that it was inconsistent with the legislature's definition of burglary, failed to treat burglary as a separate crime, and would expand the scope of the burglary statute beyond what the legislature intended. *Id.* at 77-78.

Similarly, in *State v. Gordon*, 281 Or App 654, 655, 383 P3d 942 (2016), *rev den*, 361 Or 312 (2017), we held that the defendant was entitled to a judgment of acquittal for second-degree burglary, where he planted a hidden camera in a coworker's office, thus committing the crime of invasion of personal privacy, but his job gave him access to everyone's offices, such that he was not there "unlawfully." We rejected the state's argument that the defendant "acted outside the scope of his employment by committing an unlawful act" and thereby "acted outside his license or privilege to be" there. *Id*. at 656. And in *State v. Pyshny*, 287 Or App 120, 121, 400 P3d 1039 (2017), we held that the defendant was entitled to a judgment of acquittal for first-degree burglary, where she had an "absolute and long-standing privilege to enter" her mother's house, because committing a crime against her sister while inside the house did not "automatically terminate" that privilege.

We are unpersuaded by the state's efforts to distinguish *Werner* and its progeny based on those cases involving alleged unlawful remaining, whereas this case involves alleged unlawful entering. Remaining in a building with the intent to commit a crime is burglary only if the person lacks license or privilege to remain in the building, and, under *Werner*, license or privilege to remain in a building does not cease to exist by mere virtue of the fact that the license was not intended to be used to commit a crime. The same logic applies to license or privilege to enter a building. Whether it is a case of unlawful entry or a case of unlawful remaining, we "reject the argument that the commission of a crime on private property automatically makes a person a

trespasser and, by extension, a burglar." *Werner*, 281 Or App at 165.

In sum, we agree with defendant that the state's view of unlawful entry is untenable. To put it succinctly, entering a building to commit a crime is not *burglary* if the person has permission to be there. The person obviously may be prosecuted for any crimes committed in the building. *E.g.*, *Gordon*, 281 Or App at 655 (the defendant was guilty of invasion of personal privacy, but not burglary, where he invaded the victim's privacy in a place that he had license to be). However, *burglary* requires criminal trespass, and having criminal intentions does not itself convert a lawful entry into a criminal trespass, any more than developing criminal intentions gives rise to a criminal trespass in the form of unlawful remaining. Because defendant had permission to come and go freely into R's house, he could be prosecuted for any crimes that he committed in the house, but he could not be convicted of *burglary* for entering the house with intent to commit a crime. The trial court erred in denying defendant's motion for judgment of acquittal on Count 2, first-degree burglary.[3]

Conviction on Count 2 reversed; otherwise affirmed.

---

[3] Count 1 was dismissed. That portion of the judgment is affirmed.